# RUHNKE & BARRETT
## ATTORNEYS AT LAW

47 PARK STREET
MONTCLAIR, N.J. 07042
973-744-1000
973-746-1490 (FAX)

29 BROADWAY
SUITE 1412
NEW YORK, N.Y.  10006
212-608-7949

DAVID A. RUHNKE (davidruhnke@ruhnkeandbarrett.com)    ✩    JEAN D. BARRETT (jeanbarrett@ruhnkeandbarrett.com)

REPLY TO MONTCLAIR OFFICE

September 18, 2017

Filed via ECF
Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:    United States v. Muhanad Mahmoud al Farekh,
>         15-CR-268 (S-1) (BMC)

Dear Judge Cogan:

By this letter-motion, defendant respectfully moves for certain relief *in limine*.

A.    The Court should not permit expert opinion testimony on the process of "radicalization."

This Court should preclude testimony by government experts about the alleged processes of "radicalization." Such testimony does not meet the standards of Federal Rule of Evidence 702. Any such testimony is improper propensity evidence and should be excluded by the Court on that basis. See Fed. R. Evid. 404(a).

The government has produced Jencks Act material for Lorenzo Vidino, one of its expert witnesses. Included in this material is a report he wrote at the request of a different U.S. Attorney's Office in a different case. See 3500-LV-3. This report covers several topics, but includes a discussion of the so-called "radicalization process" and its alleged components. Mr. Vidino identifies those as "preconditions, ideology, and mobilization." Id. at EX00013.[1] He describes a four phase "radicalization process." Id. at EX00015-16. In the government's letter to counsel dated September 11, 2017 (ECF 148), "radicalization," as defined by the witness, is described:

---

[1]    The page citations are to the earlier bates-stamping that appears on 3500-LV3.

HON. BRIAN M COGAN, U.S.D.J.
September 18, 2017

> Radicalization is the process by which an individual accepts a set of extreme ideas, including the legitimization of violence. This is a process that can take a long or a short amount of time. There is no typical profile of an individual who is susceptible to radicalization. Radicalization is not a linear process and is different for different individuals. Radicalization can occur without personal contact from a member of a terrorist, and may begin by watching propaganda online. There is a connection between radicalization and consumption of jihadist propaganda. Radicalization can occur in isolation but is commonly seen in small groups of friends. When the small group becomes interested in radical ideology, it creates an echo chamber that reinforces radical ideas. This dynamic accelerates the radicalization process. In the post 9/11 era, it has become more common for individuals to radicalize without a personal connection with a terrorist organization. "Mobilization" is the movement beyond consuming propaganda to taking action. Mobilization can take many forms, and includes traveling to where the organization is located.

ECF 148 at p. 4.

Defendant moves to preclude such testimony as it does not satisfy the standards of Rule 702. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 526 U.S. 579 (1993). Daubert assigns to the trial court the important gate keeping function of assuring that expert testimony offered under Rule 702 is the product of reliable principles and methods reliably applied. Here, the proposed testimony regarding the radicalization process is not "based on sufficient facts or data;" is not "the product of reliable principles and methods;" and Mr. Vidino could not have "reliably applied the principles and method to the facts" of the instant case. Fed. R. Evid. 702(b), (c) and (d). It must be excluded.

As an initial matter, Mr. Vidino has never interviewed, spoken to or otherwise examined Mr. Al Farekh, Mr. Imam or Mr. Yar. He cannot competently testify how, if at all, any of them underwent the "radicalization process." Mr. Vidino's own writing states that "radicalization is a complex and highly individualized process." 3500-LV-3 at EX00014. It is something that can take "a long time or a short time," and can take place as an individual decision or in small groups. On this basis alone—the sifting and fluid nature of the definition— any testimony about the radicalization process should be excluded as it will not assist the trier of fact to understand the evidence or to determine a fact in issue. See Fed. R. Evid. 702(a).

HON. BRIAN M COGAN, U.S.D.J.
September 18, 2017

Further, the radicalization process described by Mr. Vidino lacks a viable methodology within the academic/scientific community in which he claims to operate. It hasn't been tested, and does not appear to have been subject to peer review. While Mr. Vidino notes that the "quadripartite analysis" is used by the FBI, 3500-LV-3 at EX00016, n.11, that does not satisfy the exacting requirements of Rule 702. Notably, this testimony is absent in other contexts. For example, the government may not call an expert in a fraud case to testify about, for example, how a stockbroker becomes a fraudster or why a young man joins a street gang. This is likely because such testimony lacks a viable methodology, and does not satisfy the reliability requirements.

Finally, at its heart, any testimony about the radicalization process is sheer propensity evidence designed to demonstrate that if Mr. Al Farekh meets the criteria of radicalization as testified to by Mr. Vidino, he is more likely to be guilty of the charges. Any probative value is outweighed by the prejudice of suggesting to the jury that Mr. Al Farekh is guilty of the charges if he engaged in the acts that Mr. Vidino deems part of one of his invented four phases of radicalization.

It is respectfully requested that the Court preclude any testimony by government experts about the alleged process of "radicalization."

B.    The testimony of Najibulla Zazi should be excluded as irrelevant or, pursuant to Fed. R. Evid. 403, as taking undue time and confusing the issues.

As discussed briefly this morning, and in broad strokes, Mr. Zazi participated in the 2010 plot to bomb the New York City subway system. He has become a cooperating witness. He is expected to testify that while in training for al Qaeda in Pakistan in 2008, he met a trainer who resembled Ferid Imam, one of the two men alleged to have traveled with Mr. al-Farekh to Pakistan in March 2007. Mr. Zazi has been shown photographs of Mr. al-Farekh and Meiwand Yar and does not recognize either man. It is not anticipated the government will allege Mr. al-Farekh and Zazi ever met. We note that another of the subway plotters, Zarein Ahmedzay, will testify that he came to know an al-Qaeda trainer during the summer of 2008 known to Mr. Ahmedzay as Yousef. Mr. Ahmedzay will identify "Yousef" as Ferid Imam.

To be clear, this motion is being filed *in limine* so as not to have to wait and raise the issue by objecting to Zazi's testimony as he takes the witness stand.

HON. BRIAN M COGAN, U.S.D.J.
September 18, 2017


                              Respectfully submitted,

                              Sean M. Maher
                              David A. Ruhnke
                              Diane Ferrone
                              Co-counsel to Mr. Al Farekh


                    By:    */s/ David A. Ruhnke*

cc:     All Parties (via ECF)
C:\Case Files\Al Farekh\Motions\2017.09.18 Mtn in limine various issues.wpd