UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA     :

vs.                          :     15-cr-00286(BMC)

MUHANAD AL-FAREKH,           :

      Defendant.            :

DEFENDANT'S SENTENCING MEMORANDUM

Undersigned counsel respectfully submit this sentencing memorandum on behalf of Muhanad Al-Farekh.

I.    INTRODUCTION.

Muhanad Al-Farekh faces maximum sentences of up to lifetime incarceration. None of the crimes of which he was convicted call for mandatory penalties beyond seven years. Thus, this Court must determine what sentence is appropriate as "sufficient but not greater than necessary" to accomplish the purposes of just sentencing. 18 U.S.C. § 3553(a). For the reasons that follow, it is respectfully urged that a sentence of lifetime incarceration for this 32-year old man with no prior criminal history would be far greater than necessary. We urge the Court to impose a sentence that leaves this individual human being with hope and a future and a chance to reunite with his large and loving extended family.

1

## II. MR. AL FAREKH'S BACKGROUND AND PERSONAL CHARACTERISTICS.

In its sentencing submission, the Government views Mr. Al-Farekh in a single dimension as a terrorist prepared to kill American soldiers in the cause of jihad. The jury's verdict, which this Court must accept, of course supports that view. But Mr. Al-Farekh is more than what the jury concluded from the evidence. He is also a brother, a son, a grandson, a nephew and a friend. As the many letters submitted on his behalf attest, he is a person with love of knowledge and learning who is also, loving, generous, kind, funny, and loved by many people. He has never been known to be violent. He has a life ahead of him and people to care for him when released from confinement.

Mr. Al Farekh is also an individual who survived torture in a foreign country. (See Mr. Al Farekh's sealed declaration at ECF 106, Attachment 1.) In granting a motion to suppress certain statements allegedly made following his foreign detention, this Court described those conditions as "coercive and abusive." (ECF 118 at p. 5.) Notably, the United States did not dispute the allegations of Mr. Al-Farekh's sealed declaration. In a sense, then, he has already endured a measure of severe punishment for his offenses of conviction.

2

And, further to the point, he is someone who has been held in solitary confinement under rigorous Special Administrative Measures ("SAMs") for nearly three years. With regard to his incarceration, it is noteworthy that he has not been involved, or even alleged to have been involved, in a single violation of prison rules for his entire period of incarceration. Nor is it alleged that he engaged in acts of proselytizing a radical or violent vision of Islam among fellow inmates or anyone else. He is a quiet man who keeps to himself, is well-liked by staff, and follows the rules. This bodes well for future behavior.

As a final point, Mr. Al-Farekh has asked his counsel to emphasize to the Court that he does not believe in violence for any purpose, including religion-based violence. He believes that once one act of violence is justified, it is far too easy to justify the second, then a third, until there is no end in sight. Although he does not claim to be an Islamic scholar, Mr. Al-Farekh is a devout Muslim and does not believe that Islam supports acts of terrorist violence.

III. THE ROLE OF THE SENTENCING GUIDELINES.

As this Court well knows, and as the government concedes in its sentencing memorandum, the Sentencing Guidelines play no determinative role in fashioning an appropriate sentence. They are,

3

instead, just one of many factors the Court must acknowledge and consider. The Guidelines establish no presumption of reasonableness or, as the following discussion shows, of anything at all.

The dramatic change in the landscape of federal sentencing of the past decade seems now largely over and this Court is well versed in the role of the sentencing guidelines post-*Booker*, so it will be only briefly summarized here. A federal sentencing procedure follows a set order. First the Guidelines are calculated, followed by rulings on any departure motions. *Rita v. United States*, 551 U.S. 338, 347-48 (2007); *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Although this calculation is done first, the Guidelines are not the sole, nor even the primary, consideration in sentencing. They are simply to be taken into consideration together with all relevant factors that bear on a sentence that is consistent with the parsimony touchstone of a just sentence, *i.e.*, one that is "sufficient but not greater than necessary" to accomplish the purposes of sentencing. 18 U.S.C. § 3553(a). As the Supreme Court pointed out in *Gall*, the procedure established in *Rita* is the applicable one.

> [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party.

4

*Gall*, 552 U.S. at 49-50. (Citation and footnote omitted.)

The factors set forth in 18 U.S.C. §3553(a) are "the nature and circumstances of the offense and the history and characteristics of the defendant;" the general purposes of sentencing; the kinds of sentences available; the sentencing guidelines; relevant policy statements by the Sentencing Commission; "the need to avoid unwarranted sentence disparities;" and, the need for restitution. There is no presumption of reasonableness to the guideline range. Rather, the guidelines and their policy statements are but two of seven factors that are appropriately considered by the district court. *Gall,* 552 U.S. at 50. *See also, Kimbrough v. United States*, 552 U.S. 85 (2007) (no error in imposing below-guidelines sentence based on the unfairness of the 100 to 1 crack cocaine ratio). As the Court first noted in *Koon v. United States*, 518 U.S. 81 (1996) and repeated in *Gall*:

> every convicted person is an individual and every case [is] a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.

518 U.S. at 98, *quoted in Gall,* 552 U.S. at 52.

The final sentence imposed, whether inside or outside the guideline range is within the sound discretion of the district court. *Id.* at 41. A district court's judgment that a sentence is "sufficient, but not greater

5

than necessary" is entitled to great weight, even if that judgment is based on a disagreement with the policies behind the applicable guideline. *Kimbrough,* 552 U.S. at 101.

Thus, the guidelines are but a small part of the sentencing analysis and district courts retain broad discretion to individualize sentencing. The Supreme Court reinforced these principles when it granted petitions and immediately reversed and remanded in two 2009 cases. In *Spears v. United States*, the Eighth Circuit had reversed a district court which had rejected the 100:1 crack-to-powder ratio, substituting its own ratio in calculating Spears' sentence. 555 U.S. 261, 129 S.Ct. 840, 842 (2009). The Court held that the Eighth Circuit's conclusion that the district court erred "conflicts with our decision in *Kimbrough*." *Id.* In holding that "a categorical disagreement with and variance from the Guidelines is not suspect," the Court reaffirmed its holding in *Kimbrough* that the sentencing court has the authority to vary from guidelines based on a policy disagreement, "not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Id.* at 843.

Five days later, in *Nelson v. United States*, 129 S.Ct. 890 (2009), the Court took the same route in summarily reversing the Fourth Circuit

which had upheld a district court's application of a presumption of reasonableness to the guidelines. The Court declared:

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

*Id.* at 892. (Emphasis in original.) Thus, the guidelines are now only one factor to be considered in the formulation of a minimally sufficient individualized sentence.

IV. THE GUIDELINES IN THIS CASE.

As the Court will recall from the trial, although there were some injuries from the blast at FOB Chapman, there were no deaths.[1] That fact notwithstanding, the Guidelines in this defendant's case add up to a staggering Level 61, something one might expect to see in the case of a career offender convicted of multiple murders. That level is, of course, driven by the terrorism-related Guidelines enhancements and criminal history adjustments which classify every defendant convicted of a terrorism offense at Level VI criminal history. (Notably, Mr. Al-Farekh's criminal history is zero.) Referencing the earlier legal discussion, it is plain that this Court is not duty-bound to follow the Guidelines. Neither

---

[1] Under the Guidelines, the base offense level for Assault With Intent to Commit Murder is 33; for Aggravated Assault it is Level 14. USSG §§ 2A2.1, 2A2.2.

7

should the Guidelines be viewed as somehow presumptively correct or entitled to any extra weight. The factors set forth at § 3553(a) control.

## CONCLUSION

For the reasons set forth above, and at the sentencing hearing, this Court is urged to impose an appropriate sentence.

>Respectfully submitted,
>
>*/s/ Sean M. Maher*
>Law Offices of Sean M. Maher, PLLC
>233 Broadway
>New York, NY 10279
>(212) 661-5333
>(212) 227-5808 fax
>
>*/s/ David A. Ruhnke*
>Ruhnke & Barrett
>47 Park Street
>Montclair, New Jersey 07042
>(973)744-1000
>(973)746-1490 (fax)
>
>Co-counsel to Muhanad Al-Farekh

<u>Filed via ECF</u>:   Brooklyn, New York
February 26, 2018

CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that the foregoing memorandum, with supporting appendix, was filed on this date via the Court's electronic filing system (ECF) thereby serving all parties.

<u>/s/ David A. Ruhnke</u>

<u>Filed via ECF</u>:    Brooklyn, New York
February 26, 2018